All right, good morning. This next case is 22-1349 Lewis v. Peabody Rocky Mountain Services. Robert Lickty on behalf of Appellant. This is a factual argument, which in an employment case means it's an argument as to which potential inferences this court will recognize. So it's really a question about what inferences can you come to from facts. This does not involve a dispute between facts and conclusions. I know that many cases deal with that. Rather, it concerns what inferences a fact may support. Given the facts and the light most favorable to plaintiff in this case, could a jury make an inference that defendant's reason for terminating plaintiff was a pretext to hide either its gender discrimination or its perceived disability discrimination? And you know from the briefs that we had three groups of, well, three issues that we say that the facts would support inferences in Ms. Lewis' favor. Was she sandbagged on the lifting test at the doctor's office? At home, she lifted 80 pounds approximately 150 times. Now that's a fact. That was not contradicted. That is a fact. What inference can a jury raise from that fact? Well, that she can do it. She sent a videotape of her lifting the 80 pounds to HR, showing her progress with her home physical therapy. When she went to the doctor's office, she could only lift the weights up to her waist. She couldn't get it up to her chest, nor could she get it up above her head. But you see in the video that she not only got the 80 pounds up to her waist, she got it up to her chest, she put it up above her head. Now a jury could say, well, I don't get it. You can do it at home. We see the videotape. We see on the videotape, we see the weights that you have at the end of your bars, and yeah, that adds up to the 80 pounds, but you were not allowed to check the 80 pounds at the doctor's office. Why not? Was there discovery in this case? Was there discovery? There was some discovery. There was not much. There was exchange of documents. Yeah, I mean, you're making a pretty serious allegation of fraud against the medical provider that Peabody hired, and I'm just wondering what the quality of the investigation into the allegation that you're making here is. What's the basis for that? Actually, this would not be the doctor himself, because he did not administer the tests. Well, your sex discrimination claim is based on his comments. Yes, that's correct. It's based on his comments. But to say that the doctor was actually involved in this, a jury could make that inference. They could. A jury could do that. That's why we have juries. Are you saying that whoever administered the tests committed fraud, or the doctor, or was it a conspiracy among the... Okay. I mean, and more importantly, what evidence did you marshal to support this allegation? The evidence came only from her. It was not contradicted by anyone from the doctor's office. Neither the doctor nor any of his staff in the office justified they were not to post. I'm not accusing them of fraud. What I'm saying, however, and this is how our system works, I'm saying that the facts would support an inference for the jury to come to that conclusion. Were there other women that worked underground? No. I believe not. Were there other women that passed the 80-pound test? I don't know. That was never an issue. That was never an issue. But another fact, that's a fact, that the trial court had to take is that the doctor said he didn't think women should work underground. He said it twice. Now, that may have been because he wanted to protect them, but as you know with the Bostock case, that doesn't make any difference. And then Peabody retained this doctor just a week before a plaintiff would have returned to work under her old doctor, Dr. Sisk, who had cleared her to return to work. So then, if Dr. Sisk was administering the test, he said, okay, bring the weights in. You've got the weights. I don't have weights in my office. Bring the weights in. I'll check them. I'll make sure you can do it. And a jury could say, well, yeah, she could have done it. The issue is, what types of facts do you recognize should go to a jury so a jury can make the inferences? And that's how our system, you know, as judges, you don't question the inferences that a jury makes generally. I mean, how many Rule 50 motions do you get where the trial to the jury was reversed on a factual matter? I don't think that's very common. The court recognizes that our system is such that when it comes to making inferences, judges are not equipped to do it the way juries are, especially a panel of six or a panel of eight, however big the jury would have been. That's what juries do. That's what we're trying to protect in this case, is the role of the jury and allowing them to make these inferences. Well, counsel, on the pretext issue, and framing the issue, framing the question a little bit differently than I think in the way it's been addressed thus far, and that is, what is the evidence that Peabody lacked good faith in relying on the failed test? The timing of getting the doctor. Pardon? The timing of getting the doctor. She had been out for almost six months. And just before she was going to return with Dr. Fisk's note, I'm sorry, Dr. Sisk, S-I-S-K, just before that, they said, oh, no, that's not going to be good enough because we're going to change your case to a workers' compensation case, so now you've got to go to a different doctor. And you know how some insurance, I'm sure you've seen this in insurance companies, where insurance companies prefer certain doctors because they know that doctor's going to do it a certain way. Now, again, I'm not accusing anybody of anything. I'm saying that these types of questions should be resolved by a jury, not by judges. Well, I'm still interested in, maybe there was a change in doctor, but my question is, the test results from Dr. Sher provided to Peabody, correct? And Peabody says, well, she hasn't passed the test. Why wasn't it reasonable for Peabody to rely on those tests? No, no, again, again, inference, and the way it's phrased by this court, it's stroke. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence. So what you're saying is, can we prove exclusively that Peabody knew the doctor was going to do this? No. And we're saying we don't have to prove it conclusively. These facts support that inference, even if other conclusions could be reached on the same facts. I think it's a real important distinction. Well, could you be a little more specific? What is the inference we're talking about here as to Peabody? The inference is, she's about ready to come back. They say, oh, no, you've got to go to a different doctor. The timing of that. Then also with the, I want to go into the other two factional issues. The EMT certification, the timing of that. In other words, was Peabody using a variety of techniques to ensure that, now we don't want this woman back again. She's starting to wear out. We just don't want to have her workers' compensation liability with us anymore. We just want to get rid of her. So you have to look at all of the facts, because it shows that Peabody is making an effort on a variety of fronts to try to get her terminated in a way that would be considered lawful. Just so I understand your answers to Judge Matheson. Your case will rise or fall on an inference that Peabody conspired with Dr. Scheer to deny benefits on the basis of sex, right? No. Now, Peabody has to be in on it. I understand that. I understand. But it's not just that. What we're saying is the EMT excuse. The supervisor of that provision said the EMT... But they have to be in on the weightlifting. Excuse me? Peabody has to be a willing participant in the weight sandbagging. Yes. They would have to know that that was something that this doctor would do. And we're showing that not only through that factual example, but also through the EMT requirement example. Peabody there is saying that... I mean, there's a real dispute of fact. The general manager said, oh, that requirement was back in 2014. And the guy who was the supervisor of the position said, no, it was not a requirement. It was not a requirement even in April of 2018. So you've got to... Who's telling the truth there? Why is Peabody saying that? Unless they don't want... They added the requirement after a reorganization, correct? Excuse me? They added the certification requirement after a reorganization. Yeah, apparently. And then we asked them, well, when was the reorganization? We don't know when it was. It was maybe 2017. Yeah, but you don't dispute that the requirement had been added. It was added for her, I think, is what... What evidence is there that it was added for her? Because she wanted the position in May of 2018. And the... The HR person said, well, I think it was... I think the reorganization was in 2017. Oh, no, maybe it was the summer of 2018. So when's the summer of 2018? Is that in, like, July or August? Well, she asked for the position in May of 2018. So why didn't they give it to her then? They just stall on her then, and then they say, well, now it's a new requirement and you can't get it. I mean, these are... I understand what the court's saying. Are these facts going to be enough to give to a jury? I think that with all these facts together, yes, it's enough to give to a jury. But let a jury figure it out. That's all we're asking. Then the last issue, that is, could she have been given one of the positions that she'd worked in previously and it was uncontradicted that she worked in the previous position? The trial court said that what we were making was a conclusion. No, it's not. The fact was uncontradicted. From the uncontradicted fact, is a jury allowed to infer that she was qualified for those positions? That's the issue. Did she apply for any of those positions? She went in some 10 to 15 times, and she said, I'll take any position. I mean, she was down in the office a lot. Her husband worked there. So she went down, you know, 10 to 15 times she requested it. No, I mean, she wouldn't be, she was not offered any of the positions even though she applied for them. Or said, I will take any position. But did she specifically fill out the paperwork to apply for a position? No. They didn't give it to her. They never gave her the application. And that's another fact that the jury would consider, oh, that seems strange. Seems like they don't want her to come back. Any other questions? Because I can see I'm almost out of time. OK, thank you, counsel. OK. Let's hear next from Peabody. Good morning, Your Honors. May it please the court, I'm Owen Davis, representing defendant Peabody, Peabody, Rocky Mountain Services, LLC in this case. With me at counsel's table is Chris Otley. Before starting, I just want to note that our briefing on appeal, we refer to the plaintiff as Miss Delgado. Out of respect to her and our understanding that she changed her name while this case was pending. But to avoid confusion, since plaintiff's counsel referred to her as Mr. Lewis, Mrs. Lewis, I will do the same today. Peabody asks this court to affirm Chief Judge Brimmer's order because the following material facts are not in dispute. One, passing the 80-pound lifting requirement as part of the fitness for duty exam was an essential qualification for Miss Lewis's beltman position, which she could not meet. Two, her failure to meet that qualification was Peabody's legitimate, non-discriminatory reason for terminating her. And three, Miss Lewis's lack of EMT certification was the reason that the open facility tech position went to a different woman, a different minor, female minor with EMT certification. Stated another way, Miss Lewis did not meet her burden of production on summary judgment to raise a genuine dispute of material fact. And with respect to counsel's argument earlier, it was plaintiff's burden to produce evidence to raise a reasonable inference that a jury could find in her favor. Well, why didn't the home video of her lifting 80 pounds create at least an issue of material fact? So the video is not part of the record. It was not submitted to the court on summary judgment. And I think regardless of the video, Miss Lewis conceded at the lower court and here on appeal that there is a difference between passing the test in a doctor's office and lifting the weights at home. In her deposition, she was asked and she said that no, she understood that she had to lift, pass the lifting test in a doctor's office, which she was unable to do at least seven times, according to her. Why did she send the video to Peabody? So in her deposition testimony and in Miss Benetti's, who's the HR manager who she sent the video to, it was stated that she wanted to show Miss Benetti, you know, how, you know, the progress she was making because she had started home physical therapy. Shouldn't that trigger some obligation on the part of Peabody to investigate the test provider here to make sure there wasn't a discrepancy between what it was reporting or did report to the company versus what the employee was reporting? That's a good question, Your Honor. My understanding is that the video was sent to Miss Benetti kind of early in Miss Lewis's recovery process. The fact that she was making progress at home and again, the video is not part of the record. I don't know how clear it is that she was lifting 80 pounds. She says that she was in the video, but that's not answerable right now. But putting that aside, you know, I think Miss Benetti looked at it based on her deposition testimony, was that great job, you're making progress, but you still have to pass the test for duty exam in a doctor's office. There was no indication that Dr. Scheer was administering the test unfairly. And I will just, to add some context to this, the first time that the accusation, the first time that Miss Lewis made the accusation that Dr. Scheer administered or someone else apparently in her office administered the test unfairly was in response to summary judgment. That claim was not made in her complaint. It was not suggested during her deposition. In her deposition, she admitted to failing the test. She was not able to lift 70 pounds of weight at any of the lifting tests she took. So as we've talked about already, on appeal, Miss Lewis raises only three contentions. First, she speculates about Dr. Scheer's administration of the lifting test. Second, she questions whether EMT certification was required for the facility tech position. And third, she asserts that she was entitled to and qualified for other positions at the mine. Notably absent from that list and also was not raised in counsel's argument was any substantive argument about Miss Lewis's ADA claim. And to get to Judge Matheson's question earlier about pretext here, Peabody contends that there is, that the plaintiff has failed to produce any evidence of pretext for her sex discrimination claim or disability discrimination claim. And I'll note too that the only evidence that Miss Lewis relied on for pretext with respect to her sex discrimination claim, a summary judgment was Dr. Scheer's allegedly sexist comments based in her declaration. And then straight comments made by coworkers at the mine who she couldn't identify. It wasn't stated when those comments occurred. But I will note in her reply brief here on appeal, she concedes that the comments made by coworkers does not apply to any of the issues here on appeal. Again, with respect to the allegations against Dr. Scheer, I'll just note that, you know, Miss Lewis's declaration states, which is where this allegation originates, states that she witnessed 20 pounds being put on the barbell and she could lift that. But then she, more weight was added that she couldn't tell what the weight was and she was unable to lift that. And from that, it's speculated that not only did Dr. Scheer or somebody in his office essentially administer a false test, that there was a larger conspiracy at play with Peabody decision makers. Were there men that flunked the 80-pound test? Yes, I believe so, Your Honor. Were there women that passed the 80-pound test? Yes, and I'm glad you asked. Yes, there were other female minors underground who had to pass the lifting test that worked at Peabody at the same time as Miss Lewis. Were they evaluated by Dr. Scheer or somebody else? That I am not sure, Your Honor. I don't think that that was specifically investigated. Moving to the EMT certification issue, I will just note that Miss Lewis's question about whether that requirement existed is based on the Travis Johnson Declaration, which, as we note, Mr. Johnson left Peabody in April of 2018. And here we're talking about an issue, excuse me, a position that became open in May 2018. So he would not have personal knowledge of the requirements for that position at the time. But more importantly, on summary judgment, Miss Lewis admitted to Peabody's statement of fact 33 that EMT certification was required for the position. And importantly, going back to the pretext issue. Could you speak more directly about a counsel's claim that the timing of when the certification kicked in suggested that it was done because of her? Yes, Your Honor. So I will admit that there is a, and we do this in the brief, that there is a discrepancy around the timing of the requirement coming into existence when comparing Pat Solar's deposition testimony with Barbara Bonetti, her deposition testimony. But our argument is that that discrepancy doesn't make a difference because it is undisputed that the certification requirement did exist at the time that Miss Lewis sought the position. But furthermore, there is no, I have seen no record evidence to indicate that the requirement was made up because of Mrs. Lewis's sex or perceived disability. So again, that is, I can only speculate as to what the argument is there. And again, with respect to pretext on the EMT certification issue, it's important to note that Peabody hired a different female minor for that position. And I know that that is not dispositive of the issue, but again, it goes against any argument that there was discriminatory animus by Peabody's decision-makers. Moving to the final contention, Miss Lewis argues that she was entitled to and qualified for two other positions that did not require the 80-pound lifting requirement. As an initial matter, it's unclear on what basis Miss Lewis believes that she was entitled to those positions. Under Title VII and her sex discrimination claim, there is no entitlement to a specific position that she did not have previously. And to the extent she has not waived her ADA claim, I'll just note that in her complaint, she framed her ADA claim as a disparate treatment claim, not a failure to accommodate. Nevertheless, as Chief Judge Bremmer found, Miss Lewis's summary judgment response failed to admit or deny Peabody's fact statement that the mine did not have any job opening for which she was qualified. And the issue here is that the only evidence that she presented on this point at summary judgment was, again, her declaration where she said that she saw other job postings for these two positions. Specifically, we're talking about the surface haul truck driver position and the position at the wash plant. She did not indicate that she applied for them. She did not indicate that she was, well, let me take a step back. Her argument was that she had filled in for them at some unspecified time for some unspecified length. And based on that, she concluded she was qualified for them. And I think Judge Bremmer rightly found that that wasn't sufficient to raise a tribal issue of fact as to whether she was qualified for those other positions. And again, she did not provide any other evidence to rebut the record evidence that Peabody presented, that there was only one position open during the relevant period, and it was the facility tech position. And then finally, assuming either of those positions existed or were vacant, which, again, the record does not actually support, Ms. Lewis offered no evidence that she applied for the positions, the positions remained open, or that she was qualified for these positions. With that, I will leave the remainder of my time, unless you have any questions. Thank you, counsel. Thank you. James, did we have any rebuttal time for Mr. Lickety? Okay. All right. Thank you, counsel. You're excused.    Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Oh, you want your 20 seconds? I thought you shook your head no. I don't think I had anything left. Okay. Any questions? No, thank you. Okay. Appreciate the argument. The court will take a brief recess.